UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| SHEWAFERAW S. SHIBESHI, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 11-101-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| ALICE LLOYD COLLEGE, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

If you try to open a door with the wrong key, cleaning and polishing that key will not somehow make it work. Yet that is what plaintiff Shewaferaw S. Shibeshi is trying to do. In his initial complaint, Shibeshi attempted to open the courthouse door by alleging that defendant Alice Lloyd College ("College") violated federal law. Recognizing that federal law claims might not be available to him because of his failure to exhaust his administrative remedies, Shibeshi attempted to polish or restate these claims as state law claims. Unfortunately for Shibeshi, the outcome does not change no matter how the claims are dressed up. Shibeshi simply does not have a cause of action against the College; his complaint must be dismissed.

**BACKGROUND**

Beginning August 1, 2006, the College employed Shibeshi, an Ethiopian national, as an assistant professor of physics on an H-1B employment visa. R. 7 at 1. This visa allows employers to temporarily hire non-citizens for "specialty occupations," including college professorships. 8 U.S.C. § 1101(a)(15)(H)(i)(b). To obtain the visa, the College first filed a

Labor Condition Application ("LCA") with the Department of Labor ("Department"). R. 3-1 at 4. In the LCA, the College attested that it would pay Shibeshi the higher of (1) the actual wage paid by the College to similar employees or (2) the prevailing wage. *Id.* Wage attestation is a key element of the LCA in order to prevent employers from simply hiring foreign workers at a lower wage to the detriment of the local workforce. *See* 20 C.F.R. 655.732. The College listed Shibeshi's annual wage rate as $31,599 and the prevailing wage as $23,460. R. 8-2 at 3. The Department certified the LCA, R. 3-3 at 1, and United States Citizenship and Immigration Services approved the H-1B visa. R. 3-4 at 1.

On July 31, 2009, the visa and Shibeshi's employment ended. R. 3-4 at 1. During his nearly three years of employment, Shibeshi's average annual salary was $32,448, R. 1 at 1, a slightly higher rate than what the College submitted in the LCA.

But on March 16, 2011, Shibeshi sent the College a demand letter seeking additional compensation. Shibeshi claimed the College submitted a lower prevailing wage than it should have in the LCA and therefore underpaid him. R. 7 at 2. The College declined the demand. *Id.*

In June 2011, Shibeshi filed this claim against the College alleging underpayment of wages, among other causes of action, in violation of the Immigration and Nationality Act ("INA"). R. 1. The College filed a 12(b)(6) motion to dismiss the complaint for failure to state a claim. R. 3. Shibeshi responded to the motion but also filed an amended complaint, attempting to cure the alleged defects by converting all of his federal law claims into state law claims. R. 7. The College then filed a second 12(b)(6) motion to dismiss the amended

complaint, R. 9, to which Shibeshi responded, R. 11, and the College replied, R. 12. Those motions are now before the Court.

## DISCUSSION

The Court can dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court must consider the allegations in Shibeshi's complaint as true and construe the complaint liberally in favor of Shibeshi. *Bowman v. United States*, 564 F.3d 765, 769 (6th Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). But in order to survive the motion to dismiss, Shibeshi's complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Shibeshi presents five causes of action in his amended complaint. R. 7 at 4–7. He asserts that all five of these claims are based on alleged violations of state law, but in reality the first two are based on alleged violations of the INA. The remaining three allege state law violations. Accordingly, the following analysis is divided between Shibeshi's federal and state claims. No matter which way you slice his claims, however, they fail to state a cause of action.

### I. Shibeshi's INA Claims Are Not Exhausted

Shibeshi's federal claims fail because he has not exhausted available administrative procedures. As stated above and explained below, there is no real difference between Shibeshi's first complaint and amended complaint regarding alleged violations of the INA.

In his initial complaint, Shibeshi provided two causes of action based on alleged violations of the INA: (1) the College violated 8 U.S.C. § 1182(n)(1)(A)(i) by not paying

Shibeshi the prevailing wage, and (2) the College violated 8 U.S.C. § 1182(n)(2)(C)(vii) by not paying Shibeshi during the summer months when the College chose not to offer summer courses. R. 1 at 4. But § 1182(n)(2) and related federal regulations provide administrative procedures to challenge alleged § 1182(n) violations. Shibeshi should have filed a complaint with the Wage and Hour Division of the Department of Labor, which reviews and investigates these complaints and then issues a determination. *See* 8 U.S.C. § 1182(n)(2); 20 C.F.R. §§ 655.805, 655.815. If Shibeshi was dissatisfied with this determination, he could have requested a hearing and decision by an administrative law judge. 20 C.F.R. §§ 655.815(c), 655.820, 655.840. Thereafter, Shibeshi could have petitioned for review by the Secretary of Labor. 20 C.F.R. §§ 655.840(a), 655.845. Only after the Secretary's decision could Shibeshi have requested judicial review from a United States District Court. 20 C.F.R § 655.850.

But Shibeshi did not take these administrative steps. He simply sent a letter to the College alleging underpayment and demanding compensation, and then filed this complaint after the College refused his demands. Without Shibeshi's exhaustion of the available administrative procedures, the Court cannot hear these causes of action. *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 422-23 (4th Cir. 2005); *Shah v. Wilco Sys.*, 126 F. Supp. 2d 641, 647-48 (S.D.N.Y. 2000).

Further, even if Shibeshi did engage the administrative process, complaints must be filed "not later than 12 months" after an alleged violation. § 1182(n)(2)(A). And Shibeshi did not file this complaint until nearly two years after his employment ended. Thus, Shibeshi's claims are also time-barred. *See Ndiaye v. CVS Pharmacy 6081*, 547 F. Supp. 2d

807, 812 (S.D. Ohio 2008) (finding that a plaintiff stated a valid claim of a § 1182(n)(2) violation, but dismissing the complaint because the plaintiff filed her claim almost two years after the end of her employment).

In his amended complaint, Shibeshi attempted to revise his causes of action to avoid the exhaustion requirement. Instead of alleging INA violations, Shibeshi alleged that the College breached an employment contract. R. 7 at 4. So why is there no real difference between Shibeshi's initial federal claims and the state law claims in his amended complaint? Because Shibeshi has not stated an independent state law cause of action, but merely restyled his federal claims. Shibeshi might have been able to maintain an independent cause of action that partially relied on violations of § 1182(n). For example, in *Goel v. Patni Computer Systems, Inc.*, 2008 WL 4185691, at *7 (C.D. Ill. Sept. 8, 2008), the court determined that the plaintiff could not pursue claims of § 1182(n) violations, but could pursue common law claims based on "false promises" an employer allegedly made in an LCA. The court reasoned that federal administrative procedures were simply alternative remedies and did not bar independent state claims. *Id*. Thus, the plaintiff could use the LCA as evidence of his employer's representations in support of his common law claims. *Id*.

The problem here is that Shibeshi is not really raising a "breach of contract" claim. First, the contract with the College clearly states Shibeshi's annual wage as $31,599, R. 3-5 at 1, and Shibeshi admits he received these wages. R. 7 at 2. So far, no breach. Shibeshi attempts to get around this by claiming that the College breached its duty to pay him a prevailing wage. R. 7 at 4. But this is not based on the contract. Rather, this creative argument is premised on alleged violations of the INA. In essence, Shibeshi is suing to

enforce the College's obligations under the INA.  Rather than use the LCA as evidence in support of a common law claim, Shibeshi is attacking the LCA as if it is an employment contract and relying on the duties imposed by federal statute to state a cause of action.  These restyled claims are no different than what Shibeshi alleged in his first complaint, and they are plainly governed by federal statute and regulations.  *See* 20 C.F.R. § 655.800 (prescribing rules for the enforcement of H-1B labor condition applications and H-1B1 and E-3 Labor Attestations).  If the Court allowed plaintiffs to simply restyle their complaints to avoid exhaustion, it would nullify the INA.  Thus, under either complaint, Shibeshi cannot maintain these claims because he has not exhausted available administrative procedures.

## II. State Law Claims Fail to State a Cause of Action

The three remaining claims in Shibeshi's amended complaint allege state law violations, but these also fail to state a cause of action.

### A. *No Cause of Action for Breach of a Fiduciary Duty*

First, Shibeshi claims that the College owed him a fiduciary duty because it petitioned for an H-1B visa on his behalf and breached that duty.  R. 7 at 5.  A fiduciary relationship is one which "necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking."  *Steelvest Inc. v. Scansteel Serv. Ctr, Inc.*, 807 S.W.2d 476, 485 (Ky.1991).  An ordinary business relationship or an agreement reached through arm's length transactions "cannot be turned into a fiduciary one absent factors of mutual knowledge of confidentiality or the undue exercise of power or influence."  *Anchor v. O'Toole*, 94 F.3d 1014, 1024 (6th Cir. 1996).

Shibeshi has simply presented nothing—either in his complaint or otherwise—to establish that a fiduciary duty was created. *See Steelvest Inc.*, 807 S.W.2d at 485.

First, Shibeshi cites no authority for the proposition that sponsorship for an H-1B visa creates a fiduciary relationship. Indeed, the authority says otherwise. *See Patel v. Boghra*, 2008 WL 2477695, at *6 (N.D. Ill. June 18, 2008) (holding that there is no fiduciary duty for H-1B visa sponsors under Illinois law); *Rao v. Covansys Corp.*, 2007 WL 3232429, at *3 (N.D. Ill. Nov. 1, 2007) (same). Usually, the duty goes from employee to employer, and Kentucky decisions reflect this reality. *See e.g.*, *Steelvest Inc.*, 807 S.W.2d at 485 (holding that an employee owes a duty of loyalty to his employer)*; Davis v. Davis*, 343 S.W.3d 610, 618 (Ky. App. 2011) (same). The lone Kentucky decision discussing an employer's duty to an employee found that there was no fiduciary duty because the employee failed to provide enough evidence of a special relationship. *See Dauley v. Hops of Bowling Green, LTD.*, 2003 WL 1340013, at *1 (Ky. App. Feb. 21, 2003).

Second, Shibeshi's allegations establish this was an arm's-length transaction. When the College obtained a work visa for Shibeshi, the College was furthering its own interests. Otherwise, every time a college obtains a work visa it would owe a fiduciary duty to its employee. Shibeshi provides no authority for this novel theory. Shibeshi simply makes a conclusory statement that the College owed him a fiduciary duty. Though the Court is required to construe the complaint in the light most favorable to Shibeshi, "'conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.'" *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 457 (6th Cir. 2011) (quoting *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir.

2009)).  There simply is no evidence from which the Court can conclude that a fiduciary relationship existed.

*B. No Cause of Action for Negligent Infliction of Emotional Distress*

Second, Shibeshi claims that the College depressed his wages and thereby negligently inflicted emotional distress on him because of the prolonged economic hardship.  R. 7 at 6.  But this cause of action is not cognizable.  Kentucky imposes an "impact rule" that requires physical contact in order to claim emotional distress.  *Deutsch v. Shein*, 597 S.W.2d 141, 145-46 (Ky. 1980).  The Kentucky Supreme Court reasoned that emotional distress damages based on anything other than physical contact are "too remote and speculative" as well as "difficult to disprove."  *Id*.

Shibeshi attempts to save his claim by asserting that economic hardship can cause "direct and debilitating" effects on the human body such as malnutrition and other health care effects.  R. 11 at 6-7.  But as the Kentucky Supreme Court already pointed out, it is not enough that physical contact accompany emotional distress; it must be caused by physical contact.  *Steel Tech., Inc. v. Congleton*, 234 S.W.3d 920, 929 (Ky. 2007).  That is, contact must precede the emotional distress before recovery is permissible.  *Id*.  Here Shibeshi does not allege that the College has made any kind of physical contact with him.  The most generous reading of Shibeshi's complaint still leaves any alleged physical injury as incidental to depressed wages and not as the source of emotional distress.  Shibeshi cannot maintain this claim.

*C. No Cause of Action for Punitive Damages*

Finally, Shibeshi claims that he is entitled to punitive damages under Kentucky Revised Statute 411.186.  R. 7 at 6-7.  But a punitive damages claim is not an independent cause of action.  Rather, certain torts entitle a plaintiff to punitive damages.  *See Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389 (Ky. 1985).  Here, Shibeshi has no tort claims left, and as a result, he cannot maintain an action just for punitive damages alone.  *See Russell v. Rhodes*, 2005 WL 736612, *5 (Ky. App. 2005) (holding that it is proper to dismiss claims for punitive damages when all underlying tort claims are dismissed).  Thus, Shibeshi has no claims left with which to open the courthouse door.

## CONCLUSION

Accordingly, it is **ORDERED** that the College's motion to dismiss, R. 9, is **GRANTED**.  The claims asserted against the College are **DISMISSED WITH PREJUDICE**.  This case is **STRICKEN** from the Court's active docket and all other pending motions are **DENIED** as moot.

This the 19th day of October, 2011.



Signed By:

*Amul R. Thapar*

United States District Judge